UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CHRISTINA S.¹, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 2:22cv97 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities

---

¹ For privacy purposes, Plaintiff's full name will not be used in this Order.

which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2022.

2. The claimant has not engaged in substantial gainful activity since January 3, 2020, the alleged onset date (20 CFR 404.1571 *et seq*.).

2

3. The claimant has the following severe impairments: bilateral carpal tunnel syndrome (CTS) status post bilateral releases, history of lumbar spine disorder, history of inflammatory arthritis, bilateral shoulder tendinitis, and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift, carry, push, and/or pull up to fifty (50) pounds occasionally and up to twenty-five (25) pounds frequently; stand and/or walk for up to six (6) hours of an eight-hour workday and to sit for up to six (6) hours of an eight-hour workday with normal breaks; can occasionally climb ladders, ropes, or scaffolds; can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and can frequently handle or finger, bilaterally.

6. The claimant is capable of performing past relevant work as a production assembler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 3, 2020, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 18-26).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on August 29, 2022. On October 5, 2022 the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on November 1, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test

3

as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 4 was the determinative inquiry.

In support of remand, Plaintiff argues that the RFC assessment is erroneous. Specifically, Plaintiff contends that the ALJ improperly evaluated the opinions of Dr. Villareal and Dr. Kelly. Pursuant to Social Security Ruling ("SSR") 96-8p, an "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. Additionally, an RFC "does not represent the least an individual can do despite her limitations or restrictions, but the most." SSR 96-8p; *see also* 20 C.F.R. § 404.1545(a)(1) (residual functional capacity is the most someone can do despite their mental and physical limitations). In order to determine an RFC, the ALJ is instructed to base the assessment on "all of the relevant medical and other evidence." 20 C.F.R § 404.1545(a)(3).

Here, the ALJ found that evidence demonstrated that notwithstanding Plaintiff's alleged back and hand pain, objective evidence did not support the degree of pain and limitation she

4

claimed. (Tr. 20-24). Additionally, the ALJ recognized that other evidence, including Plaintiff's reports to other government agencies, undermined her claim that she could not work. (Tr. 21).

At the hearing, Plaintiff testified that she had significant throbbing and burning back pain with frequent muscle spasms to the degree that she could not move when they occurred. (Tr. 20, 52-53). The ALJ found that Plaintiff's medical records did not support the degree of limitation she alleged. In particular, the ALJ observed that Plaintiff's physical examinations with her care providers were essentially normal as to her back—as her records reflected normal musculoskeletal exams and did not note any limitations in lumbar range of motion, and no stiffness, tenderness, or weakness. (Tr. 21, citing 427-33, 452-57,547).

Additionally, the ALJ noted that when Plaintiff received X-rays due to her complaints of excruciating back pain the imaging showed no acute fracture, grossly normal alignment, and maintained disc space. (Tr. 23, citing Tr. 413, 414). The ALJ also observed that during the consultative examination with O. Villareal, M.D., Plaintiff was in no distress and though she had some tenderness in her lumbar spine she had negative straight leg testing bilaterally, had full range of motion in her legs and full strength in all of her major muscle groups. (Tr. 22, 358-59). Likewise, at the consultative examination Plaintiff demonstrated that she could stoop and squat without difficulty, heel and toe walk and tandem walk without difficulty, get on and off the exam table without difficulty or assistance, and stand from a seated position without difficulty. (Tr. 23,359). Although Plaintiff had some functional limitations due to her reported back pain, the ALJ found Plaintiff capable of medium work with additional postural limitations.

The ALJ also considered Plaintiff's medical records when assessing Plaintiff's reports of hand pain and arthritis. (Tr. 21-24). Plaintiff testified that she had problems with her hands,

5

including issues holding things but, as the ALJ discussed, her medical records generally reflected successful carpal tunnel surgery and otherwise minimal abnormal findings. (Tr. 20-23). For example, while Plaintiff complained of numbness and tingling in her shoulders, wrists, and hands, objective exams showed no tenderness, and normal tone, strength, and range of motion in her upper extremities. (Tr. 21 citing 3F at 21-23). As the ALJ discussed, Plaintiff underwent carpal tunnel release surgery in March 2020 on her right wrist. Although Plaintiff had an infection following surgery, by April 2020 her infection had cleared and by June 2020 her doctor indicated she was doing well. (Tr. 22 citing Tr. 510-11). The ALJ noted that while Plaintiff reported to consultative examiner Dr. Villareal in September 2020 that her wrists were worse, Dr. Villareal's objective exam findings showed Plaintiff maintained full grip strength in both hands and good fine finger manipulative abilities including buttoning, zipping, and picking up coins. (Tr. 22 citing Tr. 359).

Likewise, Plaintiff's orthopedist noted Plaintiff's symptoms had improved since her surgery. Despite some limitation in her shoulder range of motion, she had full grip strength and normal range of motion in her left wrist. (Tr. 23 citing Tr. 502-04). As the ALJ discussed, although Plaintiff's doctor recommended occupational therapy, she attended only the initial evaluation despite a plan recommending six weeks of sessions. (Tr. 23 citing Tr. 372). Moreover, the two remaining examinations in the record both revealed normal musculoskeletal exams despite Plaintiff's complaints of arm, shoulder, and hand pain. (Tr. 23 citing Tr. 453-57, 547, 565). Plaintiff's medical records reflected largely normal findings as to Plaintiff's back, minimal abnormal findings as to her shoulders, a notable failure by Plaintiff to follow up with the conservative treatment recommended, and successful carpal tunnel surgery.

Additionally, the ALJ considered other evidence that tended to undermine Plaintiff's reports that she could not work. For example, although at first Plaintiff testified that she stopped working due to back pain, the ALJ noted that Plaintiff ultimately conceded that her job ended because her department was shut down and moved out of the country. (Tr. 21 citing Tr. 46). Also, the ALJ also considered that Plaintiff received unemployment through 2020, which required her to represent that she was ready, willing, and able to work and that she was actively seeking employment. (Tr. 21 citing Tr. 157; *see also* Tr. 50).

The prior administrative medical findings of the state agency medical consultants, B. Whitley, M.D., and Joshua Eskonen, D.O., further support the ALJ's RFC assessment. (Tr. 80-82, 90-91). Both Dr. Whitley and Dr. Eskonen found that Plaintiff could perform medium work with additional postural and manipulative limitations (frequently climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; occasionally climbing ladders, ropes, and scaffold; and frequent fingering). (Tr. 24, 80-82, 90-91). The ALJ found these prior administrative medical findings persuasive because they were supported by the evidence the doctors relied on, including Plaintiff's history of carpal tunnel release surgeries on both hands, normal lumbar spine x-rays, and the objective findings at Plaintiff's consultative exam, which showed Plaintiff had normal gait, used no assistive device, could heel-toe walk and squat without difficulty, demonstrated negative straight leg raise testing, and exhibited full strength including full grip strength. (Tr. 24, 8-82, 90-91); 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be."). The ALJ determined these findings were consistent with the broader record which demonstrated

7

largely normal objective findings and imaging and successful carpal tunnel release surgery. (Tr. 24). This evidence substantially supports the ALJ's finding that Plaintiff's impairments were not disabling.

The ALJ also considered the medical opinion from consultative examiner Dr. Villareal and Plaintiff's care provider, John Kelly, M.D. Under the new regulations, "the opinions of treating physicians no longer receive controlling weight." *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022) (citing 20 C.F.R. § 416.920c); see 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Rather, the ALJ determines how persuasive the medical opinions are, with the most important factors being the "supportability" and "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2). An ALJ need only "minimally articulate" her rationale for how persuasive she finds a medical opinion or prior administrative medical finding. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

Here, the ALJ thoroughly considered Dr. Villareal's exam findings and his medical opinion. (Tr. 22, 24). Specifically, the ALJ recognized that Dr. Villareal opined that Plaintiff was "unable to do work related activities such a sitting, standing, walking or, lifting, due to pain" but that she could handle and carry small objects, and could understand with normal concentration, memory, and social interactions." (Tr. 24 citing Tr. 360). As the ALJ discussed, this opinion was not persuasive, as the only apparent support was Plaintiff's subjective reports, and the opinion was inconsistent with Dr. Villareal's own exam findings. (Tr. 24). At the consultative examination, Plaintiff reported her wrists were worse than before her carpal tunnel surgeries and she had "excruciating pain" in her lower back and lower extremities. (Tr. 24 citing Tr. 357).

8

Plaintiff reported to Dr. Villareal that she had difficulty lying down, walking, standing, stooping, and performing her daily activities due to pain in her spine. (Tr. 357). As the ALJ found, it appears this was the sole support for Dr. Villareal's opinion, because his exam actually undermined such difficulties. (Tr. 24). As the ALJ discussed, Plaintiff had no issues at her examination with Dr. Villareal with sitting, standing, walking, or lifting— rather she had a normal gait without any assistive device, and she could stoop, squat, heel to toe walk, and tandem walk, get on and off the examination table, and stand from a seated position "without difficulty." (Tr. 20 citing Tr. 359). Thus the ALJ found Dr. Villareal's opinion unpersuasive as it was directly contradicted by his objective exam findings, which were supported only by Plaintiff's subjective reports, which were themselves undermined by the record. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (Courts "do not review medical opinions independently but rather review the ALJ's weighing of those opinions for substantial evidence, and [ ] only overturn that weighing if no reasonable mind could accept the ALJ's conclusion.").

Plaintiff disagrees with the ALJ's consideration of Dr. Villareal's opinion and argues it was supported, but notably the support she points to is largely based on her own subjective reports and minimal objective evidence that the ALJ explicitly considered. The ALJ found Dr. Villareal's opinion was not supported because it was based on Plaintiff's subjective reports and Plaintiff's reference to those same subjective reports only bolsters the ALJ's point. (Tr. 24); *see, e.g., Prill v. Kijakazi*, 23 F.4th 738 (7th Cir. 2022)("[W]hen a physician's opinion is based primarily upon a patient's subjective complaints, the ALJ may discount that opinion.").

Next, Plaintiff points to the limited abnormal findings from Dr. Villareal's exam, claiming they supported Dr. Villareal's opinion that she could not sit, stand, walk, or lift at all. However,

9

the ALJ considered this evidence as well as evidence Plaintiff ignores, *i.e.*, the overwhelmingly normal findings at this exam including demonstrated functional abilities doing the precise activities Dr. Villareal opined she could not do. (Tr. 20, 24). As the ALJ properly considered Dr. Villareal's opinion in accordance with the controlling regulations, and Plaintiff's arguments do not show otherwise, there is no basis for remand here.

Plaintiff next contests the ALJ's consideration of Dr. Kelly's opinion. In addressing Dr. Kelly's opinion, the ALJ first outlined some of the extreme limitations that Dr. Kelly opined: that Plaintiff had virtually no capacity to maintain concentration or attention, she could lift effectively almost no weight, and she could not walk even enough to perform activities of daily living. (Tr. 25 citing Tr. 530-33). The ALJ then went on to address the two requisite regulatory factors, finding both that the opinion was not supported by Dr. Kelly's own objective findings and that it was inconsistent with the record as a whole. (Tr. 25). As with Dr. Villareal's opinion, the ALJ specifically referenced her prior discussion of the evidence, which shows the lack of support and inconsistency the ALJ assessed. For example, the ALJ considered Dr. Kelly's own treatment notes which reflected an entirely normal physical exam. Likewise, the ALJ's broader discussion of the medical record demonstrates the inconsistency she found between that record and Dr. Kelly's opinion. As discussed above, Plaintiff's medical records reflected normal findings, successful carpal tunnel surgery, and her own failure to follow through with conservative treatment for her alleged shoulder pain.

Plaintiff cites to *Tammy M. v. Comm'r of Soc. Sec.*, No. 2:20-CV-285, 2021 WL 2451907, (N.D. Ind. June 16, 2021) and *Johnson v. Saul*, No. 3:20-CV-285-HAB, 2021 WL 1625149, (N.D. Ind. Apr. 27, 2021), suggesting they require more than the ALJ did here to explain why the

evidence was inconsistent with Dr. Kelly's opinion--however neither case requires remand here. First, in *Tammy M.*, the ALJ did not identify evidence that was inconsistent with the opinion, and the evidence contained a mixture of findings many of which supported the opined limitations. 2021 WL 2451907, at *8. Here, there is no such issue, as the ALJ specifically referenced her prior discussion of the record evidence, which was notably devoid of findings consistent with the extreme limitations Dr. Kelly opined, but rather demonstrated largely normal functioning. Similarly, in *Johnson*, the error was not that the ALJ did not explain how the evidence undermined the opinions but rather that the ALJ did not seem to consider the opinions at all—as the doctor had issued at least three different opinions which included varying opined limitations, and yet the decision found them unpersuasive. 2021 WL 1625149, at *3-4. Here, Dr. Kelly issued only one opinion, and the ALJ summarized it's extreme nature and limitations. (Tr. 25).

The ALJ's discussion sufficiently explains why the medical evidence was not consistent with Dr. Villareal's and Dr. Kelly's opinions, and substantial evidence supports both that determination and the ALJ's decision as a whole. Thus, as there is no basis for remand, the decision will be affirmed.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby AFFIRMED.

Entered: November 17, 2022.

s/ William C.  Lee  
William C. Lee, Judge  
United States District Court